# EXHIBIT "A"

### IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| JETS R US LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | )     CIVIL ACTION FILE |
| v. | ) |
| | )     NO. 12A 03251 10 |
| CORPORATE JET GROUP, Inc.; | ) |
| CHICAGO JET GROUP LLC; JEFF | ) |
| STROMATT; and MICHAEL J. MITERA, | ) |
| JR., jointly and severally, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff Jets R Us LLC ("Plaintiff" or "Jets R Us") and states its

Complaint against Defendants Corporate Jet Group, Inc., Chicago Jet Group, Inc., Jeff

Stromatt, and Michael J. Mitera, Jr., (collectively, "Defendants") as follows:

### PARTIES

1.

Defendant Corporate Jet Group, Inc. ("Corporate Jet") is a Nevada based

corporation registered to engage in business in Georgia, with its principal office located

at 510 Brisco Boulevard, Lawrenceville GA 30046, and may be served through its

registered agent, Corporation Service Company at 40 Technology Parkway South, Suite

300, Norcross, GA 30092.

2.

Defendant Chicago Jet Group LLC ("Chicago Jet"), is an Illinois corporation not

registered to do business in Georgia, and may be served through its registered agent,

Michael J. Mitera, Jr., at 43W522 Route 30, Sugar Grove, IL 60554.

3.

Defendant Jeff Stromatt ("Mr. Stromatt") is a resident of Georgia and may be served at his residence located at 7334 Lake Walton Boulevard, Covington, GA 30014.

4.

Defendant Michael J. Mitera, Jr. ("Mr. Mitera") is a resident of Illinois and may be served at his residence or other location he may be found.

5.

Jurisdiction and venue are proper in this Court by virtue of the fact that Defendant Corporate Jet's registered agent resides in Gwinnett County, which is also where the cause of action originated for the tort, wrong, or injury done, and by virtue of O.C.G.A. § 9-10-91.

STATEMENT OF FACTS

6.

This case involves the Defendants' scheme to defraud individuals such as Plaintiff via maintenance and service work they purportedly perform on aircraft. Defendants' conduct includes lying about their repair certifications and abilities, transferring required on-site equipment from one facility to another to pass spot Federal Aviation Administration ("FAA") inspections and deceive FAA inspectors, and fraudulently claiming maintenance work is performed using non-existing equipment when no such work is actually performed-- all for the Defendants' financial gain. The situation is particularly egregious because Defendants' conduct, while reprehensible in and of itself,

puts lives at risk: minor problems on the ground can prove to be fatal for an aircraft in the air.

7.

Plaintiff Jets R Us owns various aircraft. Upon information and belief, Defendant Corporate Jets is owned by both Mr. Stromatt and Mr. Mitera, and Defendant Chicago Jets is owned by Mr. Mitera.

8.

Title 14 of the Code of Federal Regulations, Part 145 Repair Station, requires certification by the FAA for any aviation entity to present itself as a Certified Repair Station. An extensive five step process is conducted by the FAA to insure an applicant is aware of, and agrees to comply with, all Federal Aviation Regulations ("FARs") to protect the entire aviation community. The five steps include, inter alia, the following: (1) a preapplication statement of intent whereby the applicant signs a letter of compliance to ensure that all applicable regulatory requirements are addressed during the certification process; (2) a formal application whereby a team from the FAA will review and meet with the applicant and all key management personnel involved in applicant's organization; (3) a document compliance review whereby the application is thoroughly reviewed by the FAA certification team to ensure both conformity to applicable regulations and safe operating procedures; (4) a demonstration and inspection whereby the certification team ensures that the applicant's proposed procedures are effective and that the facilities and equipment meet regulatory requirement; and (5) providing certification, which occurs by issuance of a repair station certificate with operations

specifications with the appropriate ratings.

9.

An aircraft must be routinely inspected and receive preventative maintenance in accordance with strict FAA schedules and requirements, and may not be utilized absent such. Whether an aircraft receives its maintenance and servicing from a FAA-Certified Repair Station or simply from an aircraft mechanic (which is known as an A & P) has a significant impact on the value of an aircraft.

10.

On or about April 4, 2011, Plaintiff took a Lear Jet 35, serial number 064, to Defendant Corporate Jet's repair facility to obtain an A, B, C, D, and FAR 135 Conformity Inspection. Jeff Stromatt, a principal of Corporate Jet, informed Plaintiff's principal that its repair facility was an FAA-Certified Repair Station. Plaintiff had no reason to doubt the veracity of Mr. Stromatt's claim at that time.

11.

The expected time for the above inspections and expected maintenance for Plaintiff's aircraft would generally take from 25 to 35 days for the aircraft to be returned to service. Plaintiff's aircraft was delivered to Defendant's facility without any known defects by a check pilot designated by the aircraft manufacturer. He delivered the jet immediately after performing a check ride which is required when the leading edge of a wing is removed and reinstalled. It took Defendants approximately 181 days before the aircraft was returned to Plaintiff's hanger. The aircraft was returned from Lawrenceville, Georgia, to Athens, Georgia, without the aircraft records on board and the pilots reported

defects that rendered the aircraft not airworthy.

12.

Defendants provided Plaintiff with the aircraft records only after Plaintiff paid the demanded amount of $84,894.89. Upon review of the aircraft records, Plaintiff learned that Defendants had not signed the records indicating any work had been satisfactorily completed.

13.

Despite claims that Defendant Corporate Jet was a Certified Repair Station, Defendants had an A & P, Terry Broderson, deliver a "sign off" under his personal name for the inspections. The A & P did not deliver the sign off until January 17, 2012.

14.

In fact, in a conservation between Plaintiff's principal and Mr. Mietra, Mr. Mietra expressed skepticism as to whether Mr. Broderson actually inspected Plaintiff's aircraft, or was even qualified to do so.

15.

Moreover, despite claims that Defendant Corporate Jet was a Certified Repair Station before and when Plaintiff took its jet to the facility, Defendant Corporate Jet was not a Certified Repair Station. Likewise, despite representations to the contrary, Plaintiff later discovered that Defendant Corporate Jet started work on the aircraft before receiving certification from the FAA to become an authorized repair station.

16.

Indeed, it was not until months after Plaintiff took its aircraft to Defendant

Corporate Jet's facility that Defendant Corporate Jet obtained a repair station certification. In fact, Plaintiff later learned through Defendant Corporate Jet's former employee that Mr. Mitera and Mr. Stromatt temporarily transferred some of Chicago Jet's equipment to Corporate Jet's facility in order to pass FAA's inspection of required on-site equipment.

17.

Defendant's former employee also informed Plaintiff that because Plaintiff's aircraft was at Defendant Corporate Jet's facility during the FAA's inspection, which was prior to Defendant Corporate Jet obtaining a repair station certification, Defendant's plan was foiled and Defendant was prevented from (falsely) claiming that Plaintiff's aircraft was serviced by a Certified Repair Station.

18.

Subsequently, when Plaintiff's agent made a unannounced visit to Defendant Corporate Jet's facility, Plaintiff's agent noticed that Defendant had a single wing of Plaintiff's aircraft jacked, which any individual with basic aircraft knowledge realizes should not be done absent exigent circumstances. Plaintiff does not know how long the aircraft remained in that position, nor does Plaintiff know how long fuel was absent from that wing. The interior of a wing is a fuel tank. Plaintiff's aircraft was returned with fuel leaks.

19.

Upon inspection, it was discovered that a majority of the work that Defendants claimed to have performed on Plaintiff's aircraft had indeed not been performed.

20.

Payments and invoices for work purportedly performed by Defendant Corporate Jet are made payable to and remitted to Defendant Chicago Jet.

21.

According to Chicago Jet's website as of the date of this Complaint, http://www.chicagojetgroup.com, it states "We have locations in Atlanta GA., Austin TX., and Chicago to serve you better." Both Chicago Jet and Corporate Jet have websites that are substantively identical, with the same content and information, pictures, logos, and phone number. Their respective website can be accessed at www.chicagojetgroup.com and www.corporatejetgroup.com. Various press releases issued by Defendant Chicago Jet refer to Defendant Corporate Jet as its Atlanta location.

22.

By transferring Chicago Jet's equipment to Corporate Jet, Defendants are able to ensure that Corporate Jet satisfies any equipment inspection made by the FAA. This, however, violates the FAA's requirement that said equipment remain on-site for a Certified Repair Station, because said equipment is actually required to inspect aircraft.

23.

Rather than perform *bona fide* inspections, however, Defendants recognize that it is more financially lucrative to simply claim work was performed when it actually has not been performed.

24.

Defendants also recognize that in light of the complexities of aviation maintenance, most victims similar to Plaintiff will not notice Defendants' failure to

inspect the aircraft.

25.

Fortunately for Plaintiff, Plaintiff utilizes its own in-house A&P, who was able to verify that Defendants failed to perform a number of tasks they claimed to have performed.

26.

Upon consulting with one of Defendants' (now former) employees, Plaintiff learned that it is common behavior for Defendant Corporate Jets and Mr. Stromatt to claim they have performed maintenance and service work on aircraft when they have failed to do so.

## BACKGROUND FOR RICO

27.

Mr. Stromatt and Mr. Mitera are "persons" within the meaning of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-14-1 et seq.

28.

Chicago Jet and Corporate Jet constitute an "enterprise" pursuant to O.C.G.A. § 16-14-3(6).

29.

Mr. Strommatt and Mr. Mitera operate and control an "enterprise" pursuant to O.C.G.A. § 16-14-3(6).

30.

The enterprise is an ongoing organization which engages in, and whose activities affect, interstate and foreign commerce, and which engages in said activity within the State of Georgia.

31.

While Mr. Strommatt and Mr. Mitera operate, control, and participate in the enterprise and are a part of the enterprise, Mr. Strommatt and Mr. Mitera, as well as their co-conspirators, have an existence separate and distinct from the enterprise.

32.

Mr. Strommatt and Mr. Mitera maintain an interest in and control of the enterprise and also conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.

33.

Mr. Strommatt and Mr. Mitera's control of and participation in the enterprise is necessary for the successful operation of racketeering activity and for Mr. Strommatt and Mr. Mitera's scheme.

34.

The enterprise described in this complaint was the means by which Mr. Strommatt and Mr. Mitera carried out their illegal scheme and provided the necessary cover with which defendants were able to conceal their scheme.

35.

Mr. Strommatt and Mr. Mitera were only able to engage in their scheme by utilizing Chicago Jet's equipment and certification to carry out their racketeering

activities.

36.

The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activities in which Mr. Strommatt and Mr. Mitera engage.

PREDICATE ACTS

37.

Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

38.

Defendant Mitera and Strommatt's pattern of illegal racketeering acts include, *inter alia*, fraudulently misrepresenting Corporate Jet as a Certified Repair Station, transferring required on-site equipment from Chicago Jet to Corporate Jet solely to feign compliance with the FAA's requirements, and fraudulently claiming work has been performed on aircraft when it has not been performed (and in light of the lack of equipment, could not be performed), to Plaintiff and victims similar to Plaintiff.

39.

In performing the scheme, Mr. Strommatt and Mr. Mitera have utilized interstate commerce to transfer equipment between Chicago Jet and Corporate Jet.  Mr. Strommatt and Mr. Mitera have also utilized the mail and wire systems to communicate regarding the scheme, and to transfer payments for work that was claimed to have been performed (but never performed) between Georgia, where Corporate Jet is located, and Illinois, where Chicago Jet is based.

40.

The scheme described throughout the complaint perpetrated by Mr. Strommatt and Mr. Mitera, and their co-conspirators, consisted of multifarious racketeering activities, as defined by O.C.G.A. § 16-14-3. In carrying out the overt acts in furtherance of their scheme described herein, Mr. Strommatt and Mr. Mitera, and their co-conspirators, engaged in, *inter alia*, conduct in violation of Georgia state laws, including, without limitation:

(a) Violations of O.C.G.A. § 16-14-3 (9)(A)(xxix), pertaining to mail fraud;

(b) Violations of O.C.G.A . § 16-14-3 (9)(A)(ix) & (xxix), pertaining to wire fraud;

(c) Violations of O.C.G.A. § 16-14-3 (9)(A)(xxix), pertaining to racketeering;

(d) Violations of O.C.G.A. § 16-14-3 (9)(A)(ix) & (xxix), pertaining to interstate and foreign travel in aid of a racketeering enterprise; and,

(e) Such other violations of law constituting racketeering activity hereunder as may come to light during the performance of discovery.

41.

The foregoing violations of federal law constitutes racketeering activities pursuant to O.C.G.A. § 16-14-3(9)(A).

42.

All of the conduct herein alleged was committed by Mr. Strommatt and Mr. Mitera willfully, knowingly and maliciously, and with reckless disregard of the rights of Plaintiff and persons similarly situated to Plaintiff.

43.

At all material times, Mr. Strommatt and Mr. Mitera controlled and conducted the

enterprise described herein which engaged in substantial interstate and foreign commerce, and transacted business in the State of Georgia. The transactions complained of herein negatively impacted interstate and foreign commerce by the use of the instrumentalities of such commerce for illegal purposes and in direct contravention to federal and state laws.

44.

Indeed, the enterprise engages in interstate or foreign commerce by transferring equipment from other states, and by paying monies and providing funds to Mr. Mitera, who resides outside of Georgia. Moreover, in addition to affecting interstate commerce by participating in interstate commerce, Mr. Strommatt and Mr. Mitera's scheme to fraudulently utilize Defendant Chicago Jet's credentials and equipment for Corporate Jet's benefit, required the use of interstate commerce to facilitate said scheme; additionally, the illegal activities described herein negatively impact and affect such commerce.

45.

At all material times, in connection with the activities giving rise to this action, Mr. Strommatt and Mr. Mitera willfully and knowingly conspired with other individuals, as well as others known and unknown to Jets R Us to engage in various activities set forth herein and aided and abetted one another in these activities, all as proscribed and prohibited by O.C.G.A. § 16-14-4 (a) - (c).

46.

At all relevant times herein, and in furtherance of and for the purpose of executing the scheme described herein, Mr. Strommatt and Mr. Mitera, and their co-conspirators, on

numerous occasions willfully and knowingly used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matter in said depositories and by removing and causing to be removed mailable matter from said depositories, each such use of the mails in connection with the scheme and artifice to defraud and obtain money by means of false pretenses constituting the offense of mail fraud as proscribed and prohibited by O.C.G.A. § 16-14-3 (9)(A)(xxix). Each such mailing constituted a separate act of racketeering.

47.

At all relevant times herein, and in furtherance of and for the purpose of executing the scheme described herein, Mr. Strommatt and Mr. Mitera, and their co-conspirators, on numerous occasions willfully and knowingly used and caused to be used wire communications in interstate and foreign commerce by both making and causing to be made telephone calls, wire transfers of funds and other wire communications, as proscribed and prohibited by O.C.G.A. § 16-14-3 (9)(A)(ix) & (xxix). Each such transaction constituted a separate act of racketeering.

48.

At all relevant times herein, and in furtherance of and for the purpose of executing the scheme described herein, Mr. Strommatt and Mr. Mitera, and their co-conspirators, on numerous occasions did travel and caused others not named as defendants herein to travel in interstate commerce in order to attempt to and to engage in unlawful activities in violation of O.C.G.A. § 16-14-3 (9)(A)(xxix). Each such transaction constituted a separate act of racketeering.

49.

At all relevant times herein, and in furtherance of and for the purpose of executing the scheme described herein, Mr. Strommatt and Mr. Mitera knowingly engaged or attempted to engage interstate and foreign travel in aid of a racketeering enterprise.  Such action constitutes violations O.C.G.A. § 16-14-3 (9)(A)(ix) & (xxix).

## PATTERN OF RACKETEERING ACTIVITY

50.

Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

51.

As is described more fully above, Mr. Strommatt and Mr. Mitera engaged in a "pattern of racketeering activity," as defined in O.C.G.A. § 16-14-3 (8)(A), by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, with such acts having occurred within the last four (4) years and the latest of which having occurred within the last year. In fact, Mr. Strommatt and Mr. Mitera continues to commit such acts of racketeering activity.

52.

Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results

impacting upon similar victims, including Jets R Us and persons similarly situated to Plaintiff.

### 53.

The multiple acts of racketeering activity committed and conspired to or aided and abetted by Mr. Strommatt and Mr. Mitera, and their co-conspirators, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity," as defined in O.C.G.A. § 16-14-3 (8)(A).

## COUNT I: ALTER-EGO LIABILITY AND PIERCING THE CORPORATE VEIL

### 54.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

### 55.

All Defendants utilize the names Corporate Jet and Chicago Jet interchangeably.

### 56.

There exists such unity of interest and ownership that the separate personalities of Defendants and their respective owners no longer exist.

### 57.

Defendants would circumvent FAA requirements to maintain certain on-site equipment by transferring the equipment from the Chicago Jet's location in Chicago to Corporate Jet's location in Lawrenceville during FAA inspections.   Although work was purportedly to be performed by Corporate Jet, invoices required payments be mailed or

wired to Chicago Jet's address.

58.

Georgia courts pierce the corporate veil to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility.

59.

Defendants have overextended the privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, and evade contractual and tort responsibility, such that would justify piercing the corporate veil to remedy injustice.

60.

Plaintiff therefore prays that Defendants be deemed the alter-ego of one another, and that the Defendants' corporate veil be pierced, such that all Defendants be found liable for the liabilities of any Defendant individually.

COUNT II: GEORGIA RICO

61.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

62.

This claim for relief arises under O.C.G.A. § 16-14-6 of the Georgia RICO Act, and seeks relief from Defendants' activities described herein for violations of O.C.G.A. § 16-14-4 (a) & (b). Jets R Us further seek relief from Mr. Strommatt and Mr. Mitera for their conspiring to violate O.C.G.A. § 16-14-4 (a) & (b), which constitutes a violation of

O.C.G.A. § 16-14-4 (c).

63.

Mr. Strommatt and Mr. Mitera, and their co-conspirators, operate an enterprise within the meaning of O.C.G.A. § 16-14-3, which affects interstate and foreign commerce, and transacts business in the State of Georgia. Mr. Strommatt and Mr. Mitera control a substantial interest in the enterprise and at all relevant times have been associated with the enterprise and utilized it for illicit purposes as described herein. Defendants, directly or indirectly, and through the acts of their and their co-conspirator's agents, employees and servants, participated in and controlled the conduct and affairs of the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4 (a) & (b).

64.

Mr. Strommatt and Mr. Mitera conspired to undertake the foregoing, in violation of O.C.G.A. § 16-14-4 (c).

65.

Pursuant to O.C.G.A. § 16-14-3(8)(A), Mr. Strommatt, Mr. Mitera, and their agents have engaged in a pattern of racketeering activity by engaging in conduct as described herein, and by engaging in two or more acts of racketeering activity, as such term is defined in O.C.G.A. § 16-14-3, such acts all having occurred within the last four (4) years and the latest of which having occurred within the last year. To wit:

(a) Defendants and their co-conspirators engaged in one or more acts of mail fraud as a predicate act for the purposes of O.C.G.A. § 16-14-4 (a) & (b),

and O.C.G.A. § 16-14-3 (9)(A)(xxix).

(b) Defendants and their co-conspirators engaged in one or more acts of wire fraud as a predicate act for the purposes of O.C.G.A. § 16-14-4 (a) & (b), and O.C.G.A. § 16-14-3 (9)(A)(xxix).

(c) Defendants and their co-conspirators engaged in one or more acts of racketeering as a predicate act for the purposes of O.C.G.A. § 16-14-4 (a) & (b), and O.C.G.A. § 16-14-3 (9)(A)(xiii).

(d) Defendants and their co-conspirators engaged in one or more acts of theft by extortion as a predicate act for the purposes of O.C.G.A. § 16-14-4 (a) & (b), and O.C.G.A. § 16-14-3 (9)(A)(ix) & (xxix).

(e) Defendants and their co-conspirators co-conspirators conspired to perpetrate the foregoing, in violation of O.C.G.A. § 16-14-4 (c).

(f) Defendant and his co-conspirators engaged in such other violations of law constituting predicate acts hereunder as may come to light during the performance of discovery.

66.

Accordingly, Mr. Strommatt and Mr. Mitera, through a pattern of racketeering activity, acquired and maintained an interest in and control of the enterprise, and additionally, Mr. Strommatt and Mr. Mitera, who are employed by or associated with the enterprise, conducted and participate in the enterprise through a pattern of racketeering activity, in violation of O.C.G.A. § 16-14-4 (a) - (b).

67.

In furtherance of their scheme to defraud, Mr. Strommatt and Mr. Mitera claimed

that their operation in Georgia is a Certified Repair Station, despite the fact that such is false.

68.

Mr. Strommatt and Mr. Mitera, as well as their co-conspirators, engaged in the above-described offenses in an organized and systematic fashion and willfully conspired or endeavored to violate O.C.G.A. § 16-14-4(a) & (b), in direct contravention of O.C.G.A. § 16-14-4 (c).

69.

Mr. Strommatt and Mr. Mitera, and their agents, have joined in the conspiracies to violate the above enumerated provisions with various third parties not named as defendants herein.

70.

As demonstrated in detail herein, Mr. Strommatt, Mr. Mitera, and their co-conspirators have engaged in numerous overt and predicate fraudulent racketeering actions in furtherance of the conspiracy including systematic violations of both federal and state law described herein, designed to defraud Plaintiff and persons situated similarly to Plaintiff, for the pecuniary interest of Mr. Strommatt and Mr. Mitera, and their co-conspirators.

71.

Mr. Strommatt, Mr. Mitera, and their co-conspirators' pattern of illegal racketeering acts include, *inter alia*, misrepresenting the status, qualifications, and certification of their operating facilities, misrepresenting and fraudulently claiming work

was done when it was in fact not done, extorting payment by refusing to furnish records and documents necessary to operate an aircraft, and otherwise engaging in illicit conduct to further the pecuniary interests of Mr. Strommatt and Mr. Mitera to the determent of Plaintiff and persons similarly situated to Plaintiff.

72.

The nature of the above-described acts, material misrepresentations, illegal actions, and violations of federal and state law in furtherance of the conspiracy give rise to the inference that Defendant and his co-conspirators not only agreed to the objective of the violations of O.C.G.A. § 16-14-4 (c), by conspiring to violate O.C.G.A. § 16-14-4 (a) & (b), but were also aware that their ongoing fraudulent and otherwise illegal acts have been and are a part of an overall pattern of racketeering activity.

73.

Absent Mr. Strommatt and Mr. Mitera's, and their co-conspirator's, conspiracy and joint efforts, Mr. Strommatt and Mr. Mitera's scheme would have been unsuccessful. Acting jointly, Mr. Strommatt and Mr. Mitera's and their co-conspirators exercised greater power and influence, and were able to successfully engage in the activities set forth herein and to conceal such from their unwitting victims.

74.

As a direct and proximate result of Defendants and their co-conspirators' overt and predicate acts in furtherance of violating O.C.G.A. § 16-14-4 (a) & (b), and by conspiring to violate such provisions, pursuant to O.C.G.A. § 16-14-4 (c), Plaintiff's business and property have been injured.

75.

In accordance with O.C.G.A. § 16-14-6, Plaintiff is entitled to recover three times the actual damages sustained, plus punitive damages from defendant as well as attorneys' fees in the trial and appellate courts and costs and expenses of investigation and litigation reasonably incurred.

## COUNT III: BREACH OF CONTRACT

76.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

77.

Plaintiff and Defendants had an agreement that Plaintiff's aircraft would be inspected and serviced by a duly certified repair station.

78.

Defendants' failure to utilize a repair station to inspect and service Plaintiff's aircraft, as well as Defendants' utilization of an unqualified mechanic to service Plaintiff's aircraft, constitutes material breaches of said agreement.

79.

Additionally, Defendants' failure to service Plaintiff's aircraft within a reasonable time, as well as Defendants' claiming that service was performed when it was not, constitutes an additional breach of said agreement.

80.

All conditions precedent to Plaintiff's entitlement to recover the aforesaid sums

have occurred or otherwise have been performed, waived, satisfied or excused by Defendants' conduct.

81.

Plaintiff has been damaged by Defendants' material breach of the aforementioned agreement.

## COUNT IV: INCEPTIVE FRAUD / FRAUD IN THE INDUCEMENT

82.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

83.

Despite Defendants' promise that Defendant Corporate Jet was a Certified Repair Station that would service Plaintiff's Aircraft upon delivery, Defendants failed to do such and had no ability to do such in light of Defendant Corporate Jet lacking a repair station certification.

84.

Defendants had no intention of complying with their promise when it was made.

85.

Defendants made such representation to obtain Plaintiff's aircraft and business.

86.

Plaintiff justifiably relied on Defendants' representations.

87.

Plaintiff sustained damages as result of such false statements.

COUNT V: FRAUD

88.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

89.

Defendants represented to Plaintiff that Plaintiff's aircraft would be serviced by a Certified Repair Station.

90.

In reliance upon said representations, Plaintiff provided to Defendants the Plaintiff's aircraft.

91.

When Defendants made such representations, Defendants at that time knew they were false.

92.

Defendants possessed scienter of such false statements and made such statements with the intention and purpose of deceiving the Plaintiff.

93.

Plaintiff justifiably relied on Defendants' representations.

94.

Plaintiff sustained damages as result of such false statements.

COUNT VI: MONEY HAD AND RECEIVED

95.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

96.

Defendants received funds from Plaintiff for services that Defendants did not perform.

97.

In equity and good conscience the Defendants are not entitled to the money because the defendant will be unjustly enriched.

## COUNT VII: NEGLIGENT MISREPRESENTATION

98.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

99.

In the event that Defendants did not fraudulently misrepresent Defendant Corporate Jet as a repair station, then at a minimum, Defendants negligently supplied false information to foreseeable persons, including the Plaintiff, that Defendant Corporate Jet was a repair station.

100.

Plaintiff reasonably relied upon said false information.

101.

Plaintiff suffered economic injury proximately resulting from such reliance.

## COUNT VIII: NEGLIGENCE

102.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

103.

Defendants had a duty to Plaintiff to perform all repairs with due care and within acceptable standards in the industry, and to ensure that no unreasonable harm would come to Plaintiff's aircraft.

104.

Defendants breached said duty by failing to perform repairs in a reasonable manner, and causing damage to Plaintiff's aircraft.

105.

Plaintiff suffered economic damage, and Plaintiff's aircraft was damaged, as the proximate and direct result of Defendants' negligent conduct.

COUNT IX: PUNITIVE DAMAGES

106.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

107.

Defendants' actions constitute willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences of such actions, and which demonstrate a specific intent to harm Plaintiff.

108.

By virtue of the fact that Defendants acted, and failed to act, with the specific intent to cause harm to Plaintiff, there shall be no limitation regarding the amount which may be awarded as punitive damages against Defendants.

109.

Plaintiff therefore pray for exemplary and punitive damages in an amount to be determined at the trial of this matter, to deter Defendants from such wrongful and fraudulent conduct in the future.

## COUNT X: ATTORNEYS' FEES AND EXPENSES

110.

Plaintiff re-alleges and incorporates by reference all preceding Paragraphs, facts, and allegations set forth herein.

111.

Defendants have acted in bad faith, caused Plaintiff unnecessary trouble and expense, and have been and continue to be stubbornly litigious, knowingly forcing Plaintiff to incur expenses, including attorneys' fees, associated with this lawsuit, so as to entitle Plaintiff to further recover from Defendants all of Plaintiff's reasonable attorneys' fees and costs incurred in this action pursuant to O.C.G.A. § 13-6-11.


WHEREFORE, Plaintiff prays that this Court:

(1)     Grant Plaintiff a trial by jury;

(2)     Enter judgment in favor of Plaintiff and against Defendants, jointly and

severally, on all of Plaintiff's claims stated herein;

(3)     Enter judgment against Defendants for punitive damages pursuant to

O.C.G.A. § 51-12-5.1;

(4)     Award Plaintiff judgment against Defendants, jointly and severally, for

Plaintiff's attorneys' fees and expenses incurred in the action; and

(5)     Provide Plaintiff the relief prayed for in this Complaint but not explicitly

referenced in their prayer for relief; and,

(6)     Provide any other relief that this Court deems just and proper.

Respectfully submitted this ___13th___ day of April, 2012.

Yasha Heidari
Georgia Bar No. 110325
Attorney for Plaintiff

HEIDARI POWER LAW GROUP LLC
P.O. Box 79217
Atlanta, Georgia 30357
tel: 404-939-2742
fax: 404-601-7852

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

JETS R US LLC,                          )
                                        )
        Plaintiff,                      )
                                        )        CIVIL ACTION FILE
v.                                      )        NO: 12 4 0 3 2 5 1  1 0
                                        )        _____
CORPORATE JET GROUP, Inc.;              )
CHICAGO JET GROUP LLC; JEFF             )
STROMATT; and MICHAEL J. MITERA,        )
JR., jointly and severally,             )
                                        )
        Defendants.                     )

## VERIFICATION

**PERSONALLY APPEARED** before me, the undersigned officer duly authorized by law

to administer oaths, Raymond O. Boyd, who, on behalf of Jets R Us LLC, having been duly

sworn, hereby swears or affirms that the factual statements made in the foregoing Complaint are

true and correct.


                                    _____
                                    JETS R US LLC
                                    By:     Raymond O. Boyd
                                    Title:  Member


Sworn to and subscribed before me
this  10th  day of ~~November, 2011.~~
                   April , 2012

_____
Notary Public
[SEAL]

My commission expires:


OFFICIAL SEAL
YENNIFFER DELGADO
NOTARY PUBLIC-GEORGIA
FULTON COUNTY
My Comm. Expires Nov. 8, 2015